UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| TINA M. PLACKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:12-cv-87-RLY-TAB |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT SEEKING JUDICIAL REVIEW**

**I.      Introduction**

Plaintiff Tina M. Placke seeks judicial review of Commissioner Carolyn Colvin's final decision denying her disability insurance benefits. Placke makes three arguments on appeal: (1) the ALJ erred by requiring Placke to prove the severity of her symptoms with objective evidence; (2) the ALJ erred in weighing Dr. Charles Plotz's opinion; and (3) the ALJ violated the treating physician rule. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's decision be affirmed.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Colvin is automatically substituted as the Defendant in this suit.

## II. Background

### A. *Procedural History*

Placke applied for benefits in February 2010, alleging a disability onset date of December 31, 2005. Her application was denied initially and upon reconsideration. [A.R. at 13, 89-92, 95-101, 203.] In September 2011, Placke and a vocational expert testified at a hearing before an ALJ. The ALJ found that Placke was not disabled. The Appeals Council denied Placke's request for review, making the ALJ's decision the Commissioner's final decision. 20 C.F.R. §§ 404.955(a), 404.981. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), which provides that:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which she was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to hereof notice of such decision . . . in [a] district court of the United States.

### B. *The ALJ's Findings*

The ALJ's decision included the following findings: (1) Placke met the insured status requirement through June 30, 2010; (2) she did not engage in substantial gainful activity since December 31, 2005; (3) Placke's severe impairments included fibromyalgia and depression; (4) neither impairment met or equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [A.R. at 13-17]; (5) Placke had the residual functional capacity to perform light work with the following limitations: Placke could lift 10 pounds frequently and 20 pounds occasionally; she could only occasionally stoop, kneel, crouch, or climb ramps or stairs; she was able to stand and/or walk for three hours

and sit for eight hours in an eight-hour workday; she could not crawl, climb ladders, ropes, or scaffolds, or work at unprotected heights or around hazardous machinery; she could only perform simple, routine, repetitive tasks not requiring more than occasional interaction with the general public, supervisors, or co-workers; and she could not work at a rapid-production rate pace or in a job requiring more than ordinary and routine changes in duties or work setting [A.R. at 17-21]; (6) Placke was unable to perform her past relevant work as a teacher assistant or account clerk; (7) Placke was 35 years old on the alleged disability onset date, has a post-secondary degree, and can communicate in English; (8) transferability of job skills was not material because the medical-vocational rules supported a finding of "not disabled" whether or not her skills were transferrable; and (9) considering Placke's age, education, work experience, and residual functional capacity, there existed significant jobs in the national economy that she could perform. For these reasons, the ALJ concluded that Placke was not disabled. [A.R. at 21-22.]

**III.   Discussion**

   *A.   Standard*

To qualify for disability benefits, Placke must establish that she suffered from a disability. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, the claimant must present medical evidence of an impairment

3

resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security regulations outline a five-step inquiry that the ALJ is to perform in order to determine whether a claimant is disabled. The ALJ must consider whether the claimant: (1) is presently employed in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). The burden of proof is on Placke for steps one through four; only after Placke has met her evidentiary burden does the burden shift to the Commissioner at step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve

material conflicts, make independent findings of fact, and decide questions of credibility. *Perales*, 402 U.S. at 399-400. Accordingly, the Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual is "disabled," the Court must uphold the ALJ's decision. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

    B.    *Placke's Burden of Proof*

At step two, the ALJ found that Placke's fibromyalgia was a severe impairment. In determining Placke's RFC, however, the ALJ found that while "[f]ibromyalgia may account for some of her complaints . . . [s]he has no impairments that would cause pain, and there are no objective findings that would cause pain." [A.R. at 13, 19-20.] Placke argues that the ALJ violated Social Security Rulings 96-7p, 96-8p, and 12-2p by requiring objective support of her pain allegations.

S.S.R. 96-7p provides that numerous varied treatment methods undertaken by a claimant "may be a strong indication that the symptoms are a source of distress . . . and generally lend support to an individual's allegations of intense and persistent symptoms." S.S.R. 96-7p at 7 (1996). 96-7p also cautions that allegations "may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* at 6. S.S.R. 96-8p requires the ALJ to carefully consider "any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." S.S.R. 96-8p at 5 (1996). Placke

5

claims that the ALJ violated S.S.R. 96-7p and 96-8p by requiring objective proof of her pain.

Placke also claims that the ALJ violated S.S.R. 12-2p when concluding that because her test results were normal, there was no medical support for a claim that her fibromyalgia was disabling.  S.S.R. 12-2p acknowledges that a claimant suffering from fibromyalgia must often undergo numerous tests and examinations to rule out other causes.  S.S.R. 12-2p at 3 (2012).  Placke alleges that her treatment history since 2002 "amply documents her search for a medical solution to her ongoing and intractable pain," [Docket No. 10 at 3], disabling pain alone may be sufficient to find disability, and therefore the ALJ's failure constituted reversible error.  20 C.F.R. § 404.1529(b).  *See Rogers v. Comm'r*, 486 F.3d 234, 246 (6th Cir. 2007); *Johnson v. Barnhart*, 444 F.3d 804, 806 (7th Cir. 2006); *Gilbert v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).

Despite Placke's long treatment history for fibromyalgia, which was extensively discussed by the ALJ [A.R. at 13-16], her argument is unavailing because substantial evidence supported the ALJ's RFC determination.  In a May 2010 consultative examination, Dr. Sayed Wahezi concluded that Placke's "physical exam was not consistent with allegation of disabling arthritis and multiple medical/psychological complaints, as her strength, sensation and range of motion of all extremities tested were normal or very close to being within normal limits."  [A.R. at 20, 1710.]  These normal findings were consistent with Placke's 2007 examination with Dr. William Kelley, who found that Placke was capable of performing light work with certain limitations.  [A.R. at

974.] The ALJ incorporated Dr. Kelley's standing, climbing, stooping, and squatting limitations into Placke's RFC and gave his opinion some weight. [A.R. at 17, 20.] Finally, the ALJ gave significant weight to the opinion of Dr. Plotz, testifying rheumatologist, and incorporated several of his noted limitations into Placke's RFC. [A.R. at 19-20.]

The ALJ did not ignore or discount Placke's statements about her disabling fibromyalgia pain solely because she could not produce objective medical evidence. Rather, after extensive discussion of her statements, the ALJ concluded that they did not indicate more severe limitations than the objective medical evidence suggested, and, in fact, Placke's statements were directly contradicted by that evidence. [A.R. at 17-20.] Credibility determinations by the ALJ are entitled to special deference and the ALJ's decision to discount Placke's statements was reasonable. *See Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008).

Moreover, finding fibromyalgia as a severe impairment at step two does not itself prove that a claimant is disabled. *See Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) ("fibromyalgia is not always (indeed, not usually) disabling"). S.S.R. 12-2p does not even recommend a finding of disability for fibromyalgia. Rather, Placke still must show at step three that her symptoms met or equaled an Appendix 1 listing, or that they necessitated a more restrictive RFC. S.S.R. 12-2p at 5-6 (2012). Placke failed to meet this burden, nor did she show when or how the ALJ required her to prove her pain objectively. Since the ALJ did not commit legal error by violating S.S.R. 96-8p, and

7

substantial evidence supported his conclusion, the Magistrate Judge recommends that the Commissioner's decision be affirmed.

### C.     *The Weight of Dr. Plotz's Opinion*

Dr. Plotz, a rheumatologist who testified at Placke's ALJ hearing after reviewing the medical record and Placke's testimony, stated that while Placke had fibromyalgia, this condition did not account for all of her symptoms, and that the condition did not meet or equal any listing. [A.R. at 64, 66.] Dr. Plotz stated that he could not objectively gauge the level of pain caused by her condition, but imposed the following limitations: Placke could not be on her feet more than two to four hours in an eight-hour workday, and she could lift only twenty pounds occasionally and ten pounds frequently. [A.R. at 67.] The ALJ assigned Dr. Plotz's opinion significant weight and incorporated his lifting, standing and walking limitations into Placke's RFC. [A.R. at 19-20.]

Placke objects to Dr. Plotz's opinion, and the ALJ's decision to accord it significant weight, on several grounds. First, Placke claims that the ALJ violated S.S.R. 96-6p by not weighing Dr. Plotz's opinion according to the stricter standards for non-treating sources. S.S.R. 96-6p at 2 (1996). Second, Placke argues that, "Dr. Plotz was poorly informed about the fact that fibromyalgia cannot be proven by objective medical evidence nor that symptoms can be so proven" and that "pain and fatigue . . . can prevent a person from performing work." [Docket No. 10 at 7.] Placke claims that Dr. Plotz improperly discounted her fibromyalgia symptoms and the ALJ therefore erred in giving his opinion significant weight.

8

For several reasons, Placke's arguments are not persuasive. First, Placke mischaracterizes Dr. Plotz's testimony, which occurred only after he reviewed all record evidence and listened to Placke's testimony. Dr. Plotz noted Placke's extensive treatment history, that Placke had fibromyalgia, and that he could not objectively gauge her pain. However, he also testified her fibromyalgia did not account for all of her symptoms, such as pain in her fingers. [A.R. at 13, 64, 67.] Dr. Plotz did not discount Placke's testimony for lack of objective support, rather, he did so because her fibromyalgia could not be disabling as she claimed.

Second, Placke failed to demonstrate harm from the ALJ's alleged error. Despite ruling out fibromyalgia as the cause of certain symptoms and Placke presenting no evidence as to how her fibromyalgia specifically inhibited her, Dr. Plotz still assigned standing and walking limitations to account for the condition. [A.R. at 67.] The ALJ incorporated these findings into Placke's RFC [A.R. at 17] and that RFC determination was supported by substantial evidence. Placke did not designate any record evidence supporting a more restrictive RFC. Absent such harm, there is no ground for remand. *See Shinseki v. Sanders*, 556 U.S. 396, 401, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). Therefore, the ALJ appropriately weighed Dr. Plotz's testimony.

### D. *The Treating Physician Rule*

The ALJ noted that Drs. Matthew Burton and Maria Burton served as Placke's rheumatologist and primary care physician. [A.R. at 18.] In 2010, both physicians noted that Placke was disabled "due to her various symptoms including pain and fatigue."

[Docket No. 10 at 5.] The ALJ seemingly gave no weight to their opinions,[2] noting that they lacked internal or external consistency, and a finding of disability is reserved to the Commissioner. [A.R. at 20.] Placke claims that by discounting of the opinions of Drs. Matthew and Maria Burton and assigning great weight to Dr. Plotz's opinion, the ALJ violated the treating physician rule. 20 C.F.R. § 404.1527(d).[3]

The treating physician rule is a two-step process that an ALJ must undertake in assessing a claimant's RFC if a treating physician's opinion is in the record. First, the ALJ must determine if the physician's findings are supported by the medical findings and consistent with other substantial evidence on the record. If so, the opinion is to be given controlling weight. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If not, the ALJ must consider several factors in deciding how much weight to give the opinion, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship;
> (ii) the evidence in support of the treating physician's opinion;
> (iii) the consistency of the opinion with the record as a whole;
> (iv) whether the opinion is from a specialist; and
> (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2nd Cir. 2004); 20 C.F.R. § 404.1527(d)(2).

Placke claims that because Drs. Maria and Matthew Burton treated her since 2003 and

---

[2] The ALJ erroneously stated that Dr. Matthew Burton authored both opinions. [A.R. at 20.]

[3] At the time that the ALJ issued his decision the treating physician rule was codified at 20 C.F.R. § 404.1527(d). Subsequently, the former 20 C.F.R. § 404.1527(c) was removed, and 20 C.F.R. § 404.1527 (d), (e), and (f) were re-codified at 20 C.F.R. § 404.1527(c), (d), and (e), respectively.

2005, respectively, [A.R. at 746-843, 1820, 1863-93], during which time she underwent extensive treatment, their opinions should have been given greater weight than Dr. Plotz's. [Docket No. 10 at 5-6.] The Commissioner argues that the statements by Drs. Matthew and Maria Burton were not medical opinions at all, but merely conclusory statements that Placke could not engage in gainful employment. Moreover, the ALJ concluded that their opinions were unsupported by either their own treating records or other evidence. [A.R. at 20.]

The Commissioner is correct that the finding of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Thus, the conclusions of Drs. Matthew and Maria Burton that Placke was disabled are not entitled to any weight. As discussed *supra*, numerous medical examiners concluded that Placke's fibromyalgia was not a severe impairment. This inconsistency with other medical evidence was sufficient to prevent the opinions of Drs. Matthew and Maria Burton from being given controlling weight. 20 C.F.R. § 404.1527(d)(1). Moreover, while Dr. Matthew Burton said that Placke's medical condition showed "objective measures of unllamation [*sic*] and immune hyperstimulation" and that she had reached maximal medical improvement for her rheumatoid arthritis, pain, and depression, [A.R. at 1820], he attaches no supporting documentation for this conclusion. Similarly, Dr. Maria Burton stated that Placke's "sed rate which measures inflammation frequently climbs over 100 indicating severe connective tissue process" and that her medical records will show that she has a long-term rheumatologic illness. [A.R. at 1821.] However, neither Dr. Burton nor Placke

11

directs the Court to evidence supporting these symptoms nor evidence that these symptoms are disabling.

Lack of internal support and inconsistency with external evidence are valid reasons for discounting a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). As discussed *supra*, Dr. Plotz did not err in his opinion by concluding that a lack of objective measurement of pain meant that Placke's fibromyalgia did not meet or equal an Appendix 1 listing. Given this absence of legal error, and the fact that the Court cannot reweigh the evidence, the Magistrate Judge concludes that the ALJ did not violate the treating physician rule by discounting the opinions of Drs. Matthew and Maria Burton.

The ALJ refers only to Dr. Matthew Burton by name, although he refers to the disability letter that Dr. Maria Burton wrote and writes in the conjunctive about their opinions (e.g., "their opinions," "their treating records," "their conclusion of disability"). This is a fairly egregious omission, as Dr. Maria Burton had a long treatment history with Placke and was her primary care physician. Nonetheless, an ALJ is not required to "evaluate each treating source medical opinion separately." S.S.R. 96-2p at 2 (1996). The ALJ mentioned Dr. Maria Burton as Placke's primary care physician, [A.R. at 18], and the ALJ considered her opinion. Therefore, any error in failing to mention her opinion and assign it weight is harmless.

### E.    *Placke's Performance of Daily Activities*

For the first time in her reply brief, Placke argues that the ALJ erred by repeatedly referencing Placke's modest activities of daily living and using those activities to show

that Placke's statements of limiting symptoms were not credible. [Docket No. 14 at 3.] After discussing Placke's activities, the ALJ concluded that her "inconsistent statements and allegations regarding the degree of functional impairment and the range of her activities diminish the credibility of her claim of disability." [A.R. at 19.] Placke notes that an ALJ equating activities of daily living with an ability to perform full-time work was sharply criticized by the Seventh Circuit and claims that the ALJ similarly erred in this case. *See Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013); *Bjornson v. Astrue*, 671, F.3d 640, 647 (7th Cir. 2012).

An ALJ must consider activities of daily living when assessing a claimant's credibility. S.S.R. 96-7p at 3 (1996). The ALJ considered Placke's activities of daily living and therefore the ALJ's discussion of Placke's activities was proper. Even assuming *arguendo* that the ALJ ran afoul of the Seventh Circuit's warnings, Placke's argument fails because she reads *Bjornson* and *Hughes* too broadly. In *Hughes*, the ALJ failed to consider why the claimant did not seek consistent medical treatment, ignored the opinion of the consulting examiner, and made numerous factual errors. 705 F.3d at 277-78. In *Bjornson*, the ALJ also used "meaningless boilerplate" in the residual functional capacity determination and misinterpreted the record medical evidence. *Bjornson*, 671 F.3d at 645-46. The Seventh Circuit has not held that relying on activities of daily living in a credibility determination necessitates remand, or even that it is a sufficient reason to warrant remand by itself. *See Richison v. Astrue*, 462 Fed. App'x 622, 626-27 (7th Cir. 2012). Placke does not specify how the ALJ used her activities of daily living to discount

her credibility. [A.R. at 19-20.] Therefore, the Magistrate Judge cannot conclude that the ALJ equated Placke's activities of daily living with an ability to perform full-time work. Because substantial medical evidence supported the ALJ's RFC determination, remand would be inappropriate.

**IV.     Conclusion**

For the reasons above, the Magistrate Judge recommends that the ALJ's decision be affirmed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 7/26/2013

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michael Jay Mooney
mjmooney@fuse.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov